IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BECKY S. CARTWRIGHT,       )
        )
     Plaintiff,       )      Civil Action No. 3:25-cv-0141
        )
     v.       )      Magistrate Judge Patricia L. Dodge
        )
FRANK BISIGNANO       )
COMMISSIONER OF SOCIAL       )
SECURITY,       )
        )
     Defendant.       )

**MEMORANDUM OPINION[1]**

Plaintiff Becky S. Cartwright ("Cartwright") commenced this action against Frank Bisignano Commissioner of Social Security ("Commissioner") under 42 U.S.C. §§ 405(g), seeking judicial review of an unfavorable decision regarding her claim for Social Security Disability Insurance Benefits ("DIB"). Cartwright asks that the Commissioner's decision be vacated and remanded for further review, while the Commissioner seeks to have the decision affirmed. Both parties have filed briefs in support of their respective positions. For the following reasons, the Court will grant summary judgment in the Commissioner's favor and affirm the denial of Cartwright's claim for benefits.

## I. Relevant Procedural History

Cartwright filed an application for DIB under Title II of the Social Security Act on February 3, 2022, alleging disability as of October 30, 2019, due to kidney damage, fibromyalgia, degenerative disc disease, restless leg syndrome, high blood pressure, COPD, and anxiety. (R. 14,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented (ECF Nos. 11, 12) to a United States Magistrate Judge conducting all proceedings in this case. The undersigned therefore has authority to decide dispositive motions and enter final judgment.

63, 73, 169-72, 188). Her claim was initially denied on February 22, 2023, and upon reconsideration on July 25, 2023. (R. 82-86, 93-96.)

A hearing was held before Administrative Law Judge ("ALJ") Julianne Hostovich on March 8, 2024. (R. 36-61.) ALJ Hostovich issued an unfavorable decision on June 4, 2024. (R. 14-29.) The Appeals Council later denied Cartwright's request for review (R. 1-6), making the ALJ's decision final agency action. Cartwright then filed this action.

## II.    Relevant Factual Background

### A.  Relevant Medical Evidence[2]

1.  Internal Medicine Evaluations

On February 6, 2023, Patrick Carone, M.D. performed a consultative medical examination. (R. 1261-1278.) Among other things, Cartwright reported a history of neck, shoulder, and back pain radiating into her lower extremities, rating her pain at 5-6/10 intensity. During the exam, Dr. Carone observed that Cartwright: was not in acute distress; had normal gait and stance; did not need assistance getting on or off the exam table; could rise from a chair without difficulty; had 5/5 strength in all extremities; her hand and finger dexterity were intact; and her spinal x-rays were unremarkable. (R. 1264-65.) Dr. Carone did note difficulty walking on heels and toes and 1/4 squat limited by pain. There was also diffuse tenderness over her shoulders, knees, hands, hips, and elbows with 18/18 fibromyalgia trigger points positive. (R. 1264.)

Based on these findings, Dr. Carone opined Cartwright could frequently lift up to 10 pounds, occasionally carry 11 to 20 pounds, and never lift more; occasionally carry up to 10 pounds and never more; at one, time she could sit one hour, stand 30 minutes, and walk 30 minutes; and in a workday, she could sit four hours, stand two hours, and walk two hours total; did not require

---

[2]  The record contains numerous medical records from the time period of November 2018 to March 2024. Only those records relevant to disposition of this appeal are discussed herein.

a cane; could frequently manipulate and use her feet; and had postural and environmental limitations. (R. 1267-70.)

On February 21, 2023, state agency physician Nghia Van Tran, M.D., reviewed the record, including Dr. Carone's opinion. Dr. Tran found that Cartwright could lift or carry up to 20 pounds occasionally and 10 pounds frequently; stand or walk about six hours and sit about six hours per eight-hour day; frequently climb ramps, stairs, ladders, ropes, and scaffolds, balance, and stoop; and should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and fumes, odors, dusts, gases, and poor ventilation. (R. 68-70.)

On July 25, 2023, state agency physician Pamela Irene Gianni, M.D., reviewed at the reconsideration level. Dr. Gianni agreed with Dr. Tran's assessment and issued findings to that effect. (R. 78-80.)

2. Mental Health Evaluations

On February 6, 2023, Cartwright was seen by consultative psychiatric examiner Kathleen Ledermann, Psy.D. (R. 1248-1528.) Cartwright said she last saw a therapist in 2010 and a psychiatrist in 2020. (R. 1248.) Her primary care physician prescribed medication for depression and anxiety. She self-reported difficulty sleeping, depression, recurring panic attacks, angry outbursts, and difficulty with memory and concentration. (R. 1249.) She also said that she "sees ghosts every three months," but Dr. Lederman observed no evidence of hallucinations, delusions, or paranoia during the evaluation. (R. 1249-50.) The exam showed only mildly impaired attention and concentration, as well as memory skills. (R. 1250.) Based on this, Dr. Lederman opined mild limitations on understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; interacting with others and responding appropriately to usual work situations and changes in a routine work setting. (R. 1252-53).

3

On February 14, 2023, state agency psychologist Peter J. Garito, Ph.D., reviewed the record and found that Cartwright had no limitations understanding, remembering, or applying information and adapting or managing oneself, and mild limitations interacting with others and concentrating, persisting, or maintaining pace (R. 66). Dr. Garito reviewed Cartwright's mental health history but noted that she had only treated with medication from her primary care provider. (R. 66.) He found her mental impairment nonsevere and did not assess any resultant limitations. (R. 66.)

On July 6, 2023, state agency psychologist Karen Evelyn Weitzner, Ph.D., made similar findings at the reconsideration level, except she assessed a mild limitation in the ability to adapt or manage oneself. Dr. Weitzner nevertheless assessed a nonsevere impairment with no resultant mental functional limitations. (R. 76.)

### B.  Hearing Testimony

Cartwright was represented by counsel when she testified at the March 8, 2024 hearing before ALJ Hostovich. (R. 36-61.) She testified about her education and work history, stating that she was unable to work primarily due to recurring kidney stones and related complications. (R. 40-45.) Her sleep was poor due to pain and restless leg syndrome despite taking medication for the latter condition. (R. 45-46.) She also had degenerative bone disease and fibromyalgia that she treated with Cymbalta, Tylenol, and heating pads. (R. 46-47.) She had anxiety and panic attacks. Her doctor prescribed Klonopin and referred her to a counselor but she had not gone. (R. 48-50.) She also mentioned headaches when questioned by her attorney. (R. 52-53.)

Vocational expert Tania Shullo ("VE Shullo") also testified at the hearing. (R. 56-61.) VE Shullo classified Cartwright's past work in vocationally relevant terms[3] and opined as to several

---

[3]  Nurse Assistant, DOT #355.674-014, semi-skilled position, SVP 4, performed at heavy exertion level; Licensed Practical Nurse, DOT #079.374-014, skilled position, SVP 6, performed at heavy exertion level; and Store Laborer, DOT #922.687-058, unskilled, SVP 2, performed at medium exertion level. (R. 57-58.)

hypotheticals posed by the ALJ. (R. 57-59.) Cartwright's attorney also examined VE Shullo. (R. 60.)

### C. ALJ's June 4, 2024 Decision

Among other findings, ALJ Hostovich determined that Cartwright had not engaged in substantial gainful activity between October 30, 2019 and March 31, 2023. (R. 17.) The ALJ found that Cartwright to have the following severe impairments: nephrolithiasis (kidney stones), fibromyalgia, restless leg syndrome, and degenerative disc disease. (R. 17.) She also found the following nonsevere impairments: migraine/headaches; chronic COPD/asthma; hypertension; and mental disorders including depressive and anxiety disorder. (R. 17-20.) The ALJ considered the "Paragraph B Criteria"[4] and found no more than "mild" limitation in any of the four categories. (R. 18-20.)

The ALJ concluded that Cartwright did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (R. 20-21.) She further determined Cartwright had the following residual functional capacity ("RFC")[5]:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following additional functional findings. The claimant can frequently climb, stoop, kneel, crouch, and crawl; and can tolerate frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation.

(R. 21.) The ALJ found Cartwright was unable to perform any past relevant work through the date last insured. (R. 27.) The ALJ then concluded that considering Cartwright's age, education, past work, and RFC, there were jobs that existed in significant numbers in the national economy that

---

[4] "Paragraph B Criteria" refers to the "special technique" set forth in 20 C.F.R. § 404.1520a used to evaluate whether a claimant's mental condition constitutes a severe impairment.

[5] "RFC" is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).

she could have performed through the date of last insured.[6] Cartwright was therefore found not

disabled. (R. 28-29.)

### III.   Legal Standard

"On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by

'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing § 405(g)). As the

Supreme Court explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative
> law to describe how courts are to review agency factfinding. Under the substantial-
> evidence standard, a court looks to an existing administrative record and asks
> whether it contains "sufficien[t] evidence" to support the agency's factual
> determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct.
> 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of
> "substantial" in other contexts, the threshold for such evidentiary sufficiency is not
> high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*
> It means—and means only—"such relevant evidence as a reasonable mind might
> accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229,
> 59 S. Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.
> Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential
> clearly-erroneous standard).

*Id.* at 102-03 (other citations omitted).

The term "disability" means the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A). Further:

> An individual shall be determined to be under a disability only if [her] physical or
> mental impairment or impairments are of such severity that [she] is not only unable
> to do [her] previous work but cannot, considering [her] age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the immediate area in
> which [she] he lives, or whether a specific job vacancy exists for [her], or whether
> [she] would be hired if [she] applied for work.

---

[6]  Relying on VE Shullo's testimony, the ALJ cited the occupations of sorter, office helper, and routing
clerk. (R. 28.)

42 U.S.C. § 423(d)(2)(A).

To evaluate disability claims, the Commissioner uses a five-step sequential process. The process requires an ALJ to consider: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant is suffering from a severe impairment; (3) whether the impairment meets or equals the listings in the regulations; (4) whether, considering the claimant's RFC and past relevant work, the claimant can still perform past relevant work; and (5) if not, whether considering the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4). *See Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014) (recounting the five-step process).

The claimant bears the burden of proof at steps one through four, including the determination of RFC, while the ALJ makes the ultimate disability and RFC determinations. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Zirnsak*, 777 F.3d at 611. At the fifth step, the burden of demonstrating that the claimant is able to perform work available in the national economy shifts to the Commissioner. *Bowen*, 482 U.S. at 146 n.5; *Zirnsak*, 777 F.3d at 612. *See* 20 C.F.R. § 404.1560(c)(2) ("we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.")

## IV.   Discussion

Cartwright argues that remand is warranted because the ALJ erred in evaluating the persuasiveness of Dr. Carone's consultative examination and because the RFC determination failed to account for non-severe mental impairments. Each argument will be addressed in turn.

### A.  Patrick Carone, M.D.

As to the opinion of Dr. Carone, the ALJ made the following conclusion:

On February 6, 2023, physical consultative examiner, Patrick Carone, M.D., examined the claimant and thereafter opined her capable of lifting up to 10 lbs. frequently and 20 lbs. occasionally; carrying up to 10 lbs. occasionally; sitting for a cumulative total of up to 4 hours per 8-hour workday; standing for a cumulative total of up to 2 hours per 8-hour workday; and walking for a cumulative total of up to 2 hours per 8-hour workday. Dr. Carone said the claimant did not require a cane to ambulate; could use the bilateral arms for manipulative activities only frequently; could operate foot controls only frequently; could never climb ladders or scaffolds, kneel, crouch, or crawl; could occasionally climb ramps and stairs, and stoop; and could frequently balance. Dr. Carone added that the claimant could receive no exposure to unprotected heights, humidity/wetness, pulmonary irritants, or extreme cold/heat; and could receive only frequent exposing to moving mechanical parts, operation of a motor vehicle, and vibrations (Exhibit 10F). The undersigned finds Dr. Carone's contentions of exertional capacity less than that required for light work; and limitation to frequent manipulative activities bilaterally unpersuasive, due to deficiencies of both support and consistency. Deficiencies of support exist as compared to Dr. Carone's own clinical findings, which reflect normal gait and normal reflexes, sensation, and strength of all extremities; as well as findings of retained fine motor activity of the hands. Deficiencies of consistency exist, as compared to evidence generated by other medical sources, including the less-restrictive findings agreed upon by two independent state-level medical consultants (Exhibits 2A; 4A).

(R. 26.)

Cartwright argues primarily that the ALJ failed to adequately explain her supportability and consistency factor conclusions thereby providing unclear guidance as to why she rejected Dr. Carone's opined limitations.

"Supportability" is an internal check: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" is an external check: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). As the Third Circuit has explained, to satisfy the articulation

requirements for supportability and consistency, "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Instead, it is sufficient for an ALJ to "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Id.* Here, the ALJ did exactly that.

As to supportability, the ALJ concluded that the opined limitations on sitting, walking, and standing, as well as the limitation to frequent manipulative activities bilaterally lacked support "as compared to Dr. Carone's own clinical findings, which reflect normal gait and normal reflexes, sensation, and strength of all extremities; as well as findings of retained fine motor activity of the hands." (R. 26.) These findings were also discussed in detail earlier in the decision. (R. 24-25.) *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating ALJ's decision must be "read as a whole").

The ALJ therefore cited specific objective evidence from Dr. Carone's own examination of Cartwright that conflicted with his opined limitations. As such, Cartwright's argument that the ALJ did not adequately explain her supportability analysis is without merit.

Cartwright also argues that the ALJ's consistency explanation as to Dr. Carone is impermissibly vague and conclusory in nature. The ALJ found Dr. Carone's opinion inconsistent "as compared to evidence generated by other medical sources, including the less-restrictive findings agreed upon by two independent state-level medical consultants[.]" (R. 27.)

An ALJ is not required to specify whether a provider's opinion is consistent with every single piece of evidence in the medical record. Instead, the ALJ must only have provided sufficient explanation of her consistency findings to permit this Court to conduct meaningful review. *See Burnett v. Comm'r*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)) ("In the absence of such an indication, the reviewing court cannot tell if significant

probative evidence was not credited or simply ignored."). The Court is not permitted to undertake a de novo review of the Commissioner's decision by reweighing the record evidence itself and courts are prohibited from "impos[ing] their own factual determinations." *Chandler v. Comm'r*, 667 F.3d 356, 359 (3d Cir. 2011); *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").

As with Dr. Carone, the ALJ discussed the findings of Dr. Tran and Dr. Gianni in detail. She noted the record evidence that each relied on to support their opinions. She found the opinions highly consistent with one another and further noted that subsequently received records showed no worsening of symptoms. The ALJ concluded both opinions were generally persuasive but nevertheless included additional restrictions in the RFC "to account for all of the claimant's impairments and her allegations of pain." (R. 25, 26.) Read as a whole, the ALJ's decision sufficiently explains the basis for finding Dr. Carone's opinion inconsistent with the record. *See Jones*, 364 F.3d at 505.

Because the record contains substantial evidence—i.e., more than a "mere scintilla"—to support the ALJ's supportability and consistency analysis, the Court finds that the ALJ did not err in deeming Dr. Carone's opinions unpersuasive. Although Cartwright argues that other medical evidence could support Dr. Carone's opinion, the ALJ explained her finding with sufficient detail to indicate the reasons for her rejection of the proposed limitations. Accordingly, the Court finds no error in the ALJ's analysis of Dr. Carone's opinion.

### B. Nonsevere Mental Impairments

Cartwright also argues that the RFC is not supported by substantial evidence because the ALJ failed to account for her nonsevere mental impairments in the RFC. This argument is unavailing.

As the Third Circuit has made clear, an ALJ's findings at step two do not correspond to specific RFC limitations. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) ("[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three."); *see also Nolan v. O'Malley*, 2024 WL 2156158, at *1 n.2 (W.D. Pa. May 14, 2024) (citing *Hess*, 931 F.3d at 209) ("As an initial matter, the Court notes that the ALJ's finding of mild limitations in each of the Paragraph B Criteria demanded no specific formulation of the RFC."). The ALJ only needs a "valid explanation" for the limitations included in the RFC. *Id.* at 211. "Accordingly, merely finding that Plaintiff had mild mental limitations did not require the ALJ to include any specific restrictions in the RFC." *Nolan*, 2024 WL 2156158, at *1 n.2.

Here, the ALJ determined at step two that Cartwright had the nonsevere impairments of depressive and anxiety disorders. (R. 17.) The ALJ also stated that Cartwright had no limitations or mild limitations in each of the Paragraph B Criteria. (R. 18-19.) In considering the Paragraph B Criteria, the ALJ discussed Cartwright's activities of daily living, prior treatment history including the lack of specialized psychiatric care and history of generally conservative mental healthcare, self-reported assessments and symptoms including those from the consultative psych assessment with Dr. Lederman, and Cartwright's hearing testimony. (R. 18-19.) She then contemplated the persuasiveness of state psychological consultants Dr. Garito and Dr. Weitzner, who opined Cartwright had only nonsevere mental impairments and mild findings. (R. 19-20.) The ALJ found

11

these opinions to be persuasive but was still under no obligation to incorporate any express language into the RFC.

ALJ Hostovich then expressly noted that her analysis of the Paragraph B Criteria at step two "do[es] not constitute a residual functional capacity assessment" and acknowledged the analysis at steps four and five "requires a more detailed evaluation of the claimant's ability to perform any or all basic mental work activities[.]" (R. 20.) She concluded, however, that "in this case, given the claimant's lack of severe mental impairment, no further evaluation of the claimant's mental residual functional capacity is needed." (*Id.*) The ALJ therefore offered a sufficiently valid explanation for the findings included in the RFC. *See Jones*, 364 F.3d at 505 (stating an ALJ's decision must be read "as a whole").

As such, substantial evidence supports the ALJ's exercise of discretion in choosing not to include limitations in the RFC specifically accommodating Cartwright's mild limitations in the Paragraph B Criteria.

## V.    Conclusion

For the reasons explained above, the Court concludes that the ALJ's decision to deny Cartwright's claim is supported by substantial evidence. Therefore, Cartwright's Motion for Summary Judgment (ECF No. 13) is DENIED, and the decision of the ALJ is affirmed.

Appropriate orders will follow.

March 25, 2026                                    BY THE COURT:


                                                 /s/ Patricia L. Dodge
                                                 PATRICIA L. DODGE
                                                 United States Magistrate Judge